OF GUAM
2014 AUG -8 PM 3: 21

**IN THE SUPERIOR COURT OF GUAM**

| | |
|---|---|
| TELEGUAM HOLDINGS LLC AND ITS WHOLLY OWNED SUBSIDIARIES, | CIVIL CASE NO. 0334-13 |
| Plaintiff, | |
| v. | **DECISION AND ORDER** |
| TERRITORY OF GUAM; DEPARTMENT OF ADMINISTRATION, GENERAL SERVICES AGENCY; THE OFFICE OF PUBLIC ACCOUNTABILITY; PACIFIC DATA SYSTEMS, INC., | |
| Defendants. | |

**INTRODUCTION**

This matter came before the Honorable Arthur R. Barcinas on the 18th day of June, 2014, for an evidentiary hearing held with regard to the Plaintiff's Motion for Sanctions and the Defendant Government of Guam's Cross-Motion for Sanctions. Attorney Vincent C. Camacho represented the Plaintiff Teleguam Holdings LLC, and Assistant Attorney General Fred Nishihira represented the Defendant Government of Guam. Defendant Pacific Data Systems, Inc. is represented by Attorney Bill R. Mann, who appeared at the hearing and waived his client's right to be present. At the close of the hearing, the Court took the matter under advisement. For the reasons set forth below, the Plaintiff's Motion for Sanctions is GRANTED and the Defendant's Cross-Motion for Sanctions is DENIED.

## FACTUAL AND PROCEDURAL HISTORY

This action arises out of the Government of Guam's efforts to improve its electronic data transfer capacity. In 2010, the Bureau of Information Technology ("BIT"), through its employee, the Government of Guam's Chief Information Officer at the time, Ed Cruz, contracted with Dr. Norman Okamura and his team to develop bid specifications for an Invitation for Bids ("IFB") to telecommunications services providers. Dr. Okumura is a telecommunications expert at the University of Hawaii's Telecommunications and Social Informatics Research Program. The resulting draft bid went to the General Services Agency ("GSA") for finalization.

After changes were made to the bid, on June 22, 2011 GSA issued IFB GSA 064-11, soliciting a wide variety of telecommunications equipment and services. At issue in this case is Bid Form 11 of IFB GSA 064-11, Part E, for the Dedicated GovGuam Wide Area Network ("GGWAN"). Part E concerned 1 Gbps and 10 Gbps broadband data transfer infrastructure and service for the Government of Guam. Teleguam Holdings LLC ("GTA") and Pacific Data Systems, Inc. ("PDS") submitted bids. GTA submitted the lower bid for 1 Gbps service, but PDS submitted the lower bid for 10 Gbps service. PDS's aggregate bid for 1 Gbps and 10 Gbps service was lower than GTA's bid. On May 11, 2012, GTA protested GSA's recommendation to award Part E to PDS, which would grant PDS the contract for both 1 Gbps and 10 Gbps service. The Chief Procurement Officer denied GTA's protest on October 19, 2012.

Thereafter, on November 5, 2012, GTA appealed to the Office of Public Accountability ("Public Auditor"), in Procurement Appeal No. OPA-PA-12-018. The grounds for the appeal included GTA's lower bid for 1 Gbps service, and GSA's evaluation of the bids purely on price rather than on technical submissions. On January 29 and 30, the Public Auditor conducted an

evidentiary hearing. At that hearing, Ed Cruz testified that while the two networks, 1 Gbps and 10 Gbps, could potentially be provided by multiple vendors, the resulting administrative inconvenience of having multiple vendors would make the system as a whole less efficient and more burdensome to the Government of Guam. On March 6, 2013, the Public Auditor affirmed GSA's denial of GTA's protest, concluding that only one bidder should be awarded a contract for Bid Form 11, that PDS offered a lower aggregate price for the two services included in Bid Form 11, and that the resulting award to PDS was proper.

On March 20, 2013 GTA filed a Complaint before this Court. The complaint alleges the following: that the Public Auditor's decision that only one contract should be awarded for IFB GSA 064-11 Part E is arbitrary, capricious, clearly erroneous, or contrary to law; that the Public Auditor's affirmation of the award of Part E to PDS is arbitrary, capricious, clearly erroneous, or contrary to law; and that GSA erred in aggregating the prices for Part E. GTA prayed for the following relief: that this Court stay the award of Part E; that this Court find that the Public Auditor's decision was arbitrary, capricious, clearly erroneous, or contrary to law; that this Court vacate the award of Part E; that this Court award the 1 Gbps network to GTA; for attorney's fees and costs; and for other relief as the Court may deem appropriate. The Government filed an Answer on April 25, 2013.

On September 27, in response to a dispute between the parties over the proper procedural rules, the Court applied the Supreme Court's holding in Town House Department Stores v. Department of Education, 2012 Guam 25 ¶ 28, and held that this procurement challenge was a civil action that must be governed by the Guam Rules of Civil Procedure.

On December 3, 2013 the Court issued a Discovery and Scheduling Order, limiting the scope of discovery to relevant issues not developed in the administrative record. The discovery schedule was expedited, due to the extensive administrative record already developed.

In its Request for Production of Documents, the Plaintiff requested the Defendant produce, *inter alia*, "[a]ll documents which the Government relied upon in support of its decision to utilize a singer provider for GGWAN services," and "[a]ll documents, reports, memoranda and studies used in support of drafting the specifications for Part E, Bid Form 11 of IFB GSA064-11." The Government responded, respectively, "The documents that the Government relied upon are contained in the procurement record," and "No such documents exist." Pl.'s Ex. B 2-3, May 15, 2014.

The time for discovery was subsequently extended at a hearing on February 14, 2014, to allow for the deposition of the Hawaii-resident Dr. Okamura. This deposition took place on March 31 through April 2. During the deposition, Dr. Okamura discussed work he had done preparing the drafts for the IFB, meetings he had attended with vendors and Government of Guam employees, and correspondence with Ed Cruz, including sending documents and making phone calls, among other matters.

Immediately following Dr. Okamura's deposition, the Plaintiff's counsel conferred with the Defendant's counsel about the documents mentioned in the deposition testimony. The Defendant's counsel said he would check with Anita Cruz of GSA and Joey Manibusan of BIT. However, when no response was forthcoming, on April 7, 2014 the Plaintiff's counsel sent the Defendant's counsel a Local Rule 37.1 Stipulation of Counsel. This document and the Plaintiff's Motion for Sanctions were filed with the Court on April 9, 2014. The Motion for Sanctions requested, in the alternative, a default judgment in the Plaintiff's favor, a favorable

inference that the evidence is adverse to GSA's interests, production of the evidence, vacatur of the trial date, and an award of fees and costs incurred. The Defendant filed an Opposition to the Plaintff's motion and a Cross-Motion for Rule 11 Sanctions on May 1, 2014. The Plaintiff's Reply was filed on May 15, 2014. An evidentiary hearing took place on June 18, 2014. At the hearing, the Court agreed to admit the transcript of Dr. Okamura's deposition testimony into evidence, and this document was filed on June 19. The court took the matter under advisement.

## DISCUSSION

### I. Discovery in a Civil Action

Under the Guam Procurement Law, an actual or prospective bidder, offeror, or contractor who is aggrieved in connection with the method of source selection, solicitation, or award of a contract, may protest to the Chief Procurement Officer. 5 GCA § 5425(a) (2005). An administrative appeal is available before the Public Auditor. 5 GCA § 5425(e) (2005). The resulting decision of the Public Auditor is final unless the person adversely affected by the decision commences an action in the Superior Court in accordance with § 5480. 5 GCA § 5425(f) (2005).

5 GCA § 5480(a) provides that the Superior Court of Guam has jurisdiction over an action between the Territory of Guam and a bidder, offeror, or contractor, to determine whether a solicitation or award of a contract is in accordance with law. 5 GCA § 5480(a) (2005); <u>see also</u> 5 GCA § 5707(a) (2005) (granting a right of appeal from a decision by the Public Auditor to the Superior Court in accordance with 5 GCA §§ 5480-81). Such jurisdiction extends to actions at law or in equity, whether for money damages, or for declaratory or equitable relief. 5 GCA § 5480(a) (2005). The Supreme Court has interpreted the term "action" in § 5480(a) to refer to a civil action. See <u>Town House Dep't Stores, Inc. v. Dep't of Educ.</u>, 2012 Guam 25 ¶¶

28-29. Accordingly, in § 5480 actions to determine the validity of a Government of Guam procurement, the procedures for civil actions are appropriate, and writ procedures are not appropriate. See id.

While the Guam Procurement Law makes an action in the Superior Court available to a bid contractor aggrieved by a Public Auditor's decision, the Superior Court must show deference to the Public Auditor:

> Any determination of an issue or a finding of fact by the Public Auditor shall be final and conclusive unless arbitrary, capricious, fraudulent, clearly erroneous, or contrary to law. Any decision of the Public Auditor, including any determination regarding the application or interpretation of the procurement law or regulations, shall be entitled to great weight and the benefit of reasonable doubt, although it shall not be conclusive on any court having competent jurisdiction.

5 GCA § 5704 (2005).

Although 5 GCA § 5707(a) terms the right of action before the Superior Court an "appeal," the Supreme Court has interpreted § 5480(a) to mean that a bidder may institute a civil action. 5 GCA § 5707(a) (2005); 5 GCA § 5480(a); Town House Dep't Stores, Inc. v. Dep't of Educ., 2012 Guam 25 ¶¶ 28-29. Discovery in a civil action is governed by Guam Rules of Civil Procedure 26-37. GRCP 26-37. In particular, Rule 26(b) sets out the general scope and limits of discovery. GRCP 26(b). Rule 26(b)(1) provides that, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." GRCP 26(b)(1). The relevancy standard provides that, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. That is to say, a party may discover material that is not itself admissible evidence, as long as the discovery of that material may reasonably lead to other materials that are admissible.

A court may limit the scope of discovery, however, under Rule 26(b)(2)(i)-(iii). Under Rule 26(b)(2)(i), a court may disallow discovery that is unreasonably cumulative or that could be obtained more easily or cheaply. GRCP 26(b)(2)(i). Under Rule 26(b)(2)(ii), a court may disallow discovery if the party seeking it has already had ample opportunity by discovery in the action to obtain the information. Under Rule 26(b)(2)(iii), a court may disallow discovery if the burden or expense of it outweighs the benefit of the information. GRCP 26(b)(2)(iii).

Although this case is a civil action, governed by the Guam Rules of Civil Procedure, including its discovery rules, this Court has been mindful of the fact that an extensive record was produced before the Public Auditor. In its Decision and Scheduling Order of December 3, 2013, pursuant to its authority under Rule 26(b)(2), the Court limited discovery in this case to matters that both were relevant to the central question of whether, "the Government's preference for a single provider should have been outweighed by the public's interest in minimizing the cost to the public fisc," and also were not developed in the administrative record. GRCP 26(b)(2); Decision and Scheduling Order 3, Dec. 3, 2013. These limitations were above and beyond the limitations to discovery that apply to all civil actions.

## II. The Procurement Record and Discovery Efforts

5 GCA § 5249, a section of the Guam Procurement Law, requires procurement officers to maintain a procurement record with certain specified contents. The statute reads as follows:

> Each procurement officer shall maintain a complete record of each procurement. The record shall include the following:
> (a) the date, time, subject matter and names of participants at any meeting including government employees that is in any way related to a particular procurement;
> (b) a log of all communications between government employees and any member of the public, potential bidder, vendor or manufacturer which is in any way related to the procurement;

(c) sound recordings of all pre-bid conferences; negotiations arising from a request for proposals and discussions with vendors concerning small purchase procurement;

(d) brochures and submittals of potential vendors, manufacturers or contractors, and all drafts, signed and dated by the draftsman, and other papers or materials used in the development of specifications; and

(e) the requesting agency's determination of need.

5 GCA § 5249 (2005).

A procurement record was developed in this case and submitted to the Public Auditor, and was declared to be complete by Anita Cruz, the Buyer Supervisor assigned to the bid. Decl. of Anita Cruz, Def.'s Ex. 3, pp. 1-2, May 1, 2014. Robert Kono, Administrative Counsel at GSA, declared that he checked and double-checked the GSA's documents for this procurement and could not find any documents that were not included in the procurement record. Decl. of Robert Kono, Def.'s Ex. 2, p. 2, May 1, 2014. At the evidentiary hearing on June 18, 2014, Mr. Kono testified that all documents submitted by BIT to GSA had been included in the procurement record. R. Log 8, Jun. 18, 2014. When asked by the Defendant's counsel if he had ever seen a procurement record as large as this one, Mr. Kono responded in the negative. Id. On the stand, Ms. Cruz also stated that the procurement record was very large, that she was not hiding documents and had not instructed her staff to do so, and that everything GSA had been given was in the procurement record. Id. at 13.

However, the Plaintiff argues that the declarations and hearing testimony about the completeness of the procurement record are contradicted by Dr. Okamura's deposition testimony, which mentions certain documents that are not in the procurement record and certain events that are not documented in the procurement record. Dr. Okamura testified that during his work on behalf of the Government of Guam, he had worked on preparing drafts for the IFB, met with different vendors providing telecommunications services on Guam, and met with

employees of the GSA. Dep. of Okamura, 18-19. He had met with Ed Cruz in developing specifications for the GGWAN IFB as well as other aspects of IFB GSA 064-11, and corresponded with Ed Cruz by telephone and sent documents back and forth with him. Id. at 32-35. Dr. Okamura stated that while he still had some bid drafts, the best person to ask for them would be Ed Cruz. Id. at 20-21.

Before Dr. Okamura's deposition was taken, the Plaintiff made a Request for Production of Documents to the Defendant, in January 2014. The Plaintiff requested the Defendant produce, inter alia, "[a]ll documents which the Government relied upon in support of its decision to utilize a singer provider for GGWAN services," and "[a]ll documents, reports, memoranda and studies used in support of drafting the specifications for Part E, Bid Form 11 of IFB GSA064-11." The Government responded, respectively, "The documents that the Government relied upon are contained in the procurement record," and "No such documents exist." Pl.'s Ex. B 2-3, May 15, 2014.

The Plaintiff argues that the Defendant has failed to produce relevant discovery materials and failed to include required documentation in the procurement record. The materials that the Plaintiff argues are both responsive to its requests for production and not included in the procurement record include:

1) Minutes of meetings attended by Dr. Okamura and other persons including Beningo Camacho, Ed Cruz, GSA staff, and vendor representatives. Pl.'s Reply, 7-8, May 15, 2014; Dep. of Okamura, 18-19.
2) Communications and a communications log between Dr. Okamura and other persons including Ed Cruz and vendor representatives; Pl.'s Reply, 8-9, May 15, 2014; Dep. of Okamura, 32-35.
3) Drafts of the IFB worked on by Dr. Okamura, dated and signed by him. Pl.'s Reply, 9-10, May 15, 2014; Dep. of Okamura, 20-21.
4) Other papers or materials used in the development of specifications. Pl.'s Reply, 10-11, May 15, 2014; Dep. of Okamura, 20-21, 32.

## III. The Incompleteness of the Procurement Record

### A. Meeting Records

The Plaintiff asserts that the Defendant has neglected to include in the procurement log or otherwise provide the minutes of meetings attended by Dr. Okamura that were relevant to the development of the bid specifications for this procurement. Pl.'s Reply 7-8, May 15, 2014. The statute requires that the procurement record contain, "the date, time, subject matter and names of participants at any meeting including government employees that is in any way related to a particular procurement." 5 GCA § 5249(a). In his deposition testimony, Dr. Okamura stated that he attended meetings with Beningo Camacho, Ed Cruz, GSA staff, and vendor representatives. Dep. of Okamura, 18-19. At the evidentiary hearing on June 18, Ed Cruz testified that he attended "more than twenty" meetings where Dr. Okamura participated with regard to the IFB, that he was not aware if anyone was assigned to take meeting minutes, and that he was not asked to provide a record of all his meetings. R. Log 3, Jun. 18, 2014.

5 GCA § 5249(a) requires the procurement record to include, "the date, time, subject matter and names of participants at any meeting including government employees that is in any way related to a particular procurement." 5 GCA § 5249(a) (2005). The Plaintiff argues that this subsection requires inclusion of the minutes of the meetings in the procurement record. Pl.'s Reply 8, May 15, 2014. The Court does not need to determine if the precise level of detail indicated by the statutory term "subject matter" requires meeting minutes, or some other sort of record. Because the evidence shows that many meetings that are, "in any way related to a particular procurement" are not mentioned at all in the procurement record, the Court finds that the procurement record is materially incomplete under the terms of § 5249(a).

### B. Communications, Drafts and Other Materials

5 GCA § 5249(b) requires the procurement record to include, "a log of all communications between government employees and any member of the public, potential bidder, vendor or manufacturer which is in any way related to the procurement." 5 GCA § 5249(b) (2005). Another subsection, 5 GCA § 5249(d), requires, "brochures and submittals of potential vendors, manufacturers or contractors, and all drafts, signed and dated by the draftsman, and other papers or materials used in the development of specifications." 5 GCA § 5249(d) (2005). The parties dispute whether or not emails are required to be included. Pl.'s Mot. 11, Apr. 9, 2014; Def.'s Opp. 10, May 1, 2014. However, the Defendant makes the point that there is a more specific statutory section that requires emails by its terms, 5 GCA § 5247.1:

> All incoming and outgoing electronic mail (email) correspondences pertaining to matters related to the procurement of goods and services as governed by this Chapter shall be retained for a period of not less than five (5) years. Such electronic mail (email) correspondences may be used for evidentiary purposes in the appellate procedures contained in this Chapter.

5 GCA § 5247.1; Def.'s Opp. 10, May 1, 2014. This statute only came into effect in 2013, after the work developing the IFB had long been completed. 5 GCA § 5247.1; Def.'s Opp. 10, May 1, 2014.

But regardless of the extent of the Defendant's obligations, if any, to retain and disclose emails at the time, the evidence has revealed other shortfalls in the Defendant's compliance with § 5249(b). At the evidentiary hearing Ed Cruz, formerly of BIT, said that whenever he was asked for copies of communications regarding the IFB he would comply with the request. R. Log 3, Jun. 18, 2014. Robert Kono, Administrative Counsel for GSA, and Anita Cruz, the Buyer Supervisor assigned to this procurement project by GSA, both testified that the GSA gave all the documents it had, and if any documents were not included the GSA did not possess them. Id. at 8, 12. However, Ms. Cruz did mention that she did not request information, from Ed

Cruz or Dr. Okamura, including their correspondences or drafts, but instead just included what she had been provided. Id. at 12, 13. Nor did Mr. Kono request any documents from Ed Cruz or Dr. Okamura. Id. at 9. Mr. Kono also testified that under 5 GCA § 5150, when an award is estimated to exceed five hundred thousand dollars ($500,000), the Attorney General's office acts as legal advisor during all stages of the solicitation and procurement process, and Mr. Kono indicated that he did not believe it possible that other government agencies could act negligently if they acted under advice of counsel. See id. at 9.

When Ms. Anita Cruz, the Buyer Supervisor assigned to this procurement project by GSA, testified, the Court asked her several questions *sua sponte*. R. Log. 13-14, Jun. 18, 2014. When asked about a letter received by GSA from the Governor's Chief of Staff, Ms. Cruz was unable to recall when the letter had been sent, but said the date should be in the communication log. Id. at 14. Upon further questioning, however, she was unable to testify that a communications log had been created for the procurement record, in contradiction to the Government's duties under 5 GCA § 5249. Id.

Dr. Okamura testified in his deposition that part of his work included preparing IFB drafts. Dep. of Okamura, 18-19. Ed Cruz testified that "maybe four or five drafts" were made by Dr. Okamura and his team. R. Log 4, Jun. 18, 2014. Robert Kono testified that whatever in the way of drafts was provided to GSA was included in the procurement record, but he was not sure how many. Id. at 8. On redirect examination, Ed Cruz did testify that a document included in the procurement record was an IFB draft prepared by Dr. Okamura, but that the document was not dated or signed by Dr. Okamura. R. Log 11, Jun. 18, 2014; Def.'s Ex. 19. Mr. Cruz then said that the document does "have the author." R. Log 11, Jun. 18, 2014. However, upon its own review of Exhibit 19, the Court could find no identification of the author of the document

or the date on which it was produced. Ms. Anita Cruz also identified the same document as an unsigned and undated IFB draft. Id. at 12.

The Procurement Law also requires the Government to include "other papers or materials used in the development of specifications." 5 GCA § 5249(e). Ed Cruz did identify a document included in the procurement record written by Dr. Okamura named Assessment of Telecommunications Services in the Government of Guam. R. Log 3, Jun. 18, 2014. Mr. Cruz also stated that BIT used historical data based on the Government's previous attempts to contract for improved telecommunications services, and gathered information from government agencies to draft the specifications. Id. at 4. Likewise, Dr. Okamura testified that generating the IFB required preliminary work gathering and analyzing data on the current services that were being provided to the Government of Guam and looking at the capabilities of the various telecommunications providers in Guam. Dep. of Okamura, 17-18. These documents were used to generate the Assessment, but were not themselves included in the procurement record.

Taken together, the testimony shows a lack of accountability from the three relevant government agencies, BIT, GSA, and the AG's office, and a failure to work collaboratively to ensure that the statute was complied with, including not only GSA turning over the documents it had on hand to create the procurement record, but also ensuring that all required documentation was created in the first place, retained, and transmitted to GSA. The testimony indicates a specific failure to include a communications log in the procurement record, in direct contravention of the statutory mandate. The testimony also shows noncompliance with the statutory requirement to include all drafts and to ensure that they are dated and signed by the draftsman. Likewise, the testimony shows that research documents relating to the needs of the Government of Guam and the capabilities of telecommunications services providers on Guam,

used to help develop the telecommunications IFB, were not included in the procurement record. In addition to the material incompleteness of the procurement record under the terms of § 5249(a), as discussed above, the Court also finds that the procurement record is materially incomplete under the terms of § 5249(b), (d), and (e).

## IV. The Government's Defenses

The Government of Guam makes several arguments against the Plaintiff's Motion for sanctions, arguing that the procurement record is voluminous and thorough and that every document that GSA has was given to GTA's counsel, that the Plaintiff's requests for production do not extend to the documents the Plaintiff now seeks and that had such a discovery request been made it would have exceeded the limitations allotted by the Court, and that the time to contest the completeness of the procurement record was before the Public Auditor, not before this Court. Def.'s Opp. 2-5, May 1, 2014.

## A. Size of the Procurement Record

The Defendant's counsel notes the large size of the procurement record, which is "approximately 11½ inches tall, and consists of more than three thousand three hundred fifty (3,350) pages." Def.'s Opp. 5, May 1, 2014. Moreover, Defendant's counsel has "never seen a procurement record as voluminous as the one in this procurement bid." Id.

While the Court appreciates the great amount of time and effort that no doubt was required to generate this procurement record, neither time and effort nor size are the criteria for determining whether a procurement record is complete under the Guam Procurement Law. Instead, the statute demands the creation of the procurement record, and the statute also specifies what must be included in it: "Each procurement officer shall maintain a complete record of each procurement. The record shall include the following..." 5 GCA § 5249 (2005).

Under the plain language of the statute, the procurement record is not complete unless it includes the enumerated list of required documents. Nor does the assertion that "there was and is nothing more GSA can give to GTA," even if true, necessarily mean that the record is complete. There could be many reasons for required documents to not be included in the procurement record. It is not the reason why documents are not included in the procurement record that makes it complete or incomplete, but simply the fact of their inclusion or lack thereof. As ruled above, the record is not complete, because it does not contain all the documents required by statute.

## B. Plaintiff's Right to Make the Requests for Production

The Defendant argues that the requests for production, being limited to GGWAN services and Part E, Bid Form 11, do not by their terms make a broad request for correspondence and documents between Dr. Okamura and GSA, as much of Dr. Okamura's work and correspondence referred to other parts of the IFB. The Defendant also argues that the Court's Decision and Scheduling Order of December 3, being limited to matters that were both relevant to whether or not "the Government's preference for a single provider should have been outweighed by the public's interest in minimizing the cost to the public fisc," and also were not developed in the administrative record, means that even if the Plaintiff had made such a broad request, that request would be improper and the documents would not be discoverable.

These arguments mistake the meaning of the Court's limitation of discovery in its December 3, 2013 order. As stated above, a procurement proceeding before the Superior Court pursuant to 5 GCA § 5480 is a civil action. See 5 GCA § 5480(a); Town House Dep't Stores, Inc. v. Dep't of Educ., 2012 Guam 25 ¶¶ 28-29. This means that discovery under the Guam Rules of Civil Procedure is appropriate. Decision and Scheduling Order 2, Dec. 3, 2014

However, the Court limited discovery pursuant to its Rule 26(b)(2) authority. Id. This was because the Public Auditor had already developed a significant administrative record. The Court allowed additional discovery to supplement the discovery conducted before the Public Auditor, but acknowledged that discovery should not be duplicative of the discovery conducted before the Public Auditor. See id. at 3. However, the allegation of the Plaintiff is that the documents it seeks were not included in the procurement record or presented to the Public Auditor, in contravention of the Government's duty to do so. Pl.'s Reply 11-13, May 15, 2014. When the Court ordered that any supplemental discovery should not duplicate the original discovery that had already been rendered, the Court did not erase the Government's obligation to comply with the Guam Procurement Law, nor did the Court forbid the Plaintiff from seeking any discovery materials that the Plaintiff was previously owed and yet had never been provided. To whatever extent, if any, such materials should have been included in the procurement record, but were not, the Court's December 3, 2013 Decision and Scheduling Order did not forbid the Plaintiff from seeking them.

Nor was this Court's determination of what was relevant to the action as narrow as the Defendant emphasizes. The Court wrote the following:

> It appears to the Court that the underlying issue in this case is whether the Government's preference for a single provider should have been outweighed by the public's interest in minimizing the cost to the public fisc. Factual evidence helpful to the Court in resolving this issue includes evidence pertaining to the costs, financial and administrative, of establishing and maintaining the single-provider network and GTA's proposed dual-provider network, and the facts and rationale underpinning the Government's preference for a single provider.

Decision and Scheduling Order 3, Dec. 3, 2013.

Moreover, the relevancy burden in Rule 26 is that the sought material does not necessarily need to be admissible on its own, just that it must appear to be "reasonably

calculated to lead to the discovery of admissible evidence." GRCP 26(b)(1); People of Guam v. Orallo, 2004 Guam 5 ¶ 19 (affirming that inadmissible evidence may be discoverable); see also Shoen v. Shoen, 5 F.3d 1289, 1292 (9th Cir 1993) (arguing that the analogous Federal Rule provision creates a broad right of discovery because "wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth"). The Court finds it reasonably likely that the documents that were required to be included in the procurement record bear on the issues of the relative weights and merits of a single-provider versus a dual-provider network. Even if it so happens that these documents do not relate to this question, so long as it is reasonably calculated that the discovery materials will lead to other discovery materials that are relevant, then the Plaintiff's request is permitted under Guam Rule of Civil Procedure 26(b)(1). The Court finds this to be the case. The Defendant has both an independent statutory obligation under 5 GCA § 5249 to disclose correspondences of Dr. Okamura's, and also a Rule 26(b)(1) obligation, pursuant to the Plaintiff's requests for production of documents relating to the Government's decision making and bid development processes for GGWAN services and Part E, Bid Form 11 of IFB GSA064-11.

**C. Laches**

Lastly, the Defendant argues that the time for the Plaintiff to raise any objections to the completeness of the procurement record was before the Public Auditor, and not before this Court. Def.'s Opp. 4, May 1, 2014; R. Log 2, Jun. 18, 2014. To the extent the Defendant argues that new information cannot be discovered and introduced before this Court, the Court has already ruled against the Defendant. See supra at 6-7; see also Decision and Scheduling Order 2, Dec. 3, 2014. Otherwise, the Defendant makes an argument based on the equitable doctrine of laches. "Laches is an equitable time limitation on a party's right to bring suit, resting on the

maxim that 'equity aids the vigilant, not those who sleep on their rights.'" Duenas v. Guam Election Comm'n, 2008 Guam 1 ¶ 16 (quoting Magic Kitchen, LLC v. Good Things Int'l Ltd., 63 Cal. Rptr. 3d 713, 723 (Cal. Ct. App. 2007) (citation omitted)). Laches applies in cases of "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice against the party asserting the defense." Guam Election Comm'n v. Responsible Choices for All Adults Coal., 2007 Guam 20 ¶ 77; Duenas, 2008 Guam 1 ¶ 17. This means that laches protects against a party's "inexcusable delay which prejudices the [opposing party's] ability to respond." May v. People, 2005 Guam 17 ¶ 27.

Before the present action was initiated pursuant to 5 GCA § 5480, the procurement dispute was under the jurisdiction of the Public Auditor. The Public Auditor does have the jurisdiction to order certain evidence-gathering and disclosure measures: "The Public Auditor shall have the power to compel attendance and testimony of, and production of documents by any employee of the government of Guam, including any employee of any autonomous agency or public corporation." 5 GCA § 5702 (2005); see also 2 GAR §12109 (setting out in greater detail the authority of the Public Auditor to compel attendance, testimony, and production of evidence). However, this statutory authority does not reach, at least not in sufficiently clear terms, non-employee consultants of the Government of Guam who are not present in Guam, regardless of the importance of their testimony. See 5 GCA § 5702 (2005). Dr. Okamura is a resident of Hawaii and an employee of the University of Hawaii, with whom the Government of Guam contracted to develop the bid specifications for IFB GSA 064-11.

The Court, applying the Supreme Court's holding in Town House Dep't Stores, Inc. v. Dep't of Educ., determined that as a civil action, this suit was governed by the Guam Rules of Civil Procedure. See Town House Dep't Stores, Inc. v. Dep't of Educ., 2012 Guam 25 ¶¶ 28-29;

Decision and Scheduling Order 2, Dec. 3, 2014. Accordingly, the Court authorized discovery, though the Court limited that discovery pursuant to its Rule 26(b)(2) authority. Decision and Scheduling Order 2, Dec. 2-3, 2014. The Court subsequently extended the discovery deadline so that the deposition of Dr. Okamura could occur. R. Log, Feb. 14, 2014. At this deposition, the Plaintiff's counsel learned the information that has subsequently led to the present motion. Pl.'s Mot. 3, Apr. 9, 2014; Pl.'s Reply 6-7, May 15, 2014; see Dep. of Okamura. At a hearing on July 9, 2014, counsel for the Plaintiff informed the Court that the process by which it was able to compel Dr. Okamura's deposition was by filing a special proceeding with the Hawaii Superior Court, and the slow pace of this procedure created the need for the extension of the discovery period until Dr. Okamura's deposition could take place on March 31 and April 1, 2014. See R. Log, Jul. 9, 2014 (in the context of a dispute over whether Dr. Okamura's deposition transcript should be admitted into evidence for a prospective bench trial, or whether his live or televideo testimony was required). Under the circumstances of this case, it cannot be said that the failure to acquire evidence from Dr. Okamura at the proceeding before the Public Auditor amounts to a lack of diligence by the Plaintiff.

As stated above, the appropriate procedure in a § 5480 action is not to hold a purely on-the-record review using the facts found by the Public Auditor, but rather is to hold a civil action, wherein discovery under the Guam Rules of Civil Procedure is appropriate. As is contemplated by the discovery mechanism, at the deposition of Dr. Okamura, the Plaintiff's counsel learned information that was not previously known by the Plaintiff and not included in the procurement record. Far from the Plaintiff sitting on its rights, the Plaintiff's counsel immediately asked the Defendant's counsel about the documents to which Dr. Okamura referred. Pl.'s Reply 3, May 15, 2014. Being unable to resolve the matter without Court intervention, the Plaintiff brought

the matter to the Court's attention on April 9, 2014, eight days after the last day of the deposition. Pl.'s Mot., Apr. 9, 2014. The Plaintiff was not able to seek and learn the relevant information at the proceeding before the Public Auditor, has behaved diligently before this Court, and has not caused any unreasonable delay that has prejudiced the Defendant. The Defendant's laches defense must fail.

**V. Remedy**

In its Motion for Sanctions, the Plaintiff requested, in the alternative, a default judgment in the Plaintiff's favor, an inference that the evidence is adverse to GSA's interests, production of the evidence, vacatur of the trial date, and an award of fees and costs incurred. Pl.'s Mot. 1, Apr. 9, 2014. The Plaintiff moves for sanctions against the Defendant under Guam Rule of Civil Procedure 37, especially Rule 37(c)(1) relating to a failure to make required Rule 26 disclosures, as well as moving for personal sanctions against the Defendant's counsel under Rules 11 and 26, addressed below. See id. at 5-9.

Guam Rule of Civil Procedure allows the issuance of sanctions against a party that has not complied with its discovery obligations. GRCP 37. Depending on the relevant subsection of the rule, permitted sanctions include, *inter alia*, an order compelling disclosure or discovery, monetary expenses payable by the party or party's attorney, contempt of court, default judgment, and other appropriate sanctions. GRCP 37(a), (a)(4)(A), (b)(1), (b)(2)(C), (c)(1). Trial courts have broad discretion to issue Rule 37 sanctions for discovery violations, especially under Rule 37(c)(1). See Adams v. Duenas et al., 1998 Guam 15 ¶ 10 (referring to discovery sanctions in general); see Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001) (referring to Federal Rule 37(c)(1) in particular). Courts are not required to find bad faith or callous disregard of the discovery rules in order to issue Rule 37(c)(1) sanctions.

Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 596 (4th Cir. 2003). However, issuing a default judgment as a discovery sanction is not as open to the court's discretion. See Adams v. Duenas et al., 1998 Guam 15 ¶ 10 (describing default judgments awarded as sanctions for discovery violations as "drastic sanctions" such that the range of the trial court's discretion must be narrowed); see also R & R Sails, Inc. v. Insurance Co. of Pennsylvania, 673 F.3d 1240, 1247 (9th Cir. 2012) (requiring a federal district court to find that a party's discovery noncompliance involved willfulness, fault, or bad faith before dismissing a claim or granting a remedy that amounts to dismissing a claim).

This court may compel a party to disclose discovery materials and discovery responses. GRCP 37(a). However, in this case the Court is not convinced that a further production order would significantly remedy the incompleteness of the procurement record. Buyer Supervisor Anita Cruz and Administrative Counsel Robert Kono of GSA have both declared and testified on the stand that GSA has no further documents to produce. Def.'s Opp. Ex. 2, Decl. of Kono, Ex. 3, Decl. of Cruz, May 1, 2014; R. Log 8, 13, Jun. 18, 2014. The evidentiary hearing on June 18 revealed that many documents required to be in the procurement record under 5 GCA § 5249 were either not generated or not requested by GSA. See R. Log passim, Jun. 18, 2014. Furthermore, additional delay would be detrimental to the public policy interest in expeditious resolution of procurement disputes. See 5 GCA § 5701 (2005) (directing the Public Auditor to adopt rules of procedure which, to the fullest extent possible, will provide for the expeditious resolution of procurement controversies); see also 2 GAR § 12101. This public policy detriment is likely to outweigh what limited benefit could come from a production order.

This Court has jurisdiction "to determine whether a solicitation or award of a contract is in accordance with the statutes, regulations, and the terms and conditions of the solicitation." 5

GCA § 5480(a). In making this determination, the Procurement Law instructs the Court to be deferential to the ruling of the Public Auditor:

> Any determination of an issue or a finding of fact by the Public Auditor shall be final and conclusive unless arbitrary, capricious, fraudulent, clearly erroneous, or contrary to law. Any decision of the Public Auditor, including any determination regarding the application or interpretation of the procurement law or regulations, shall be entitled to great weight and the benefit of reasonable doubt, although it shall not be conclusive on any court having competent jurisdiction.

5 GCA § 5704 (2005). Any judgment in the Plaintiff's favor would overturn the ruling of the Public Auditor, a course of action that the statute only permits the Superior Court to take under limited conditions. The grant of a default judgment as a discovery sanction would therefore grant an extreme remedy, and do so without the statutorily required finding that the Public Auditor made a determination of an issue or a finding of fact that was arbitrary, capricious, fraudulent, clearly erroneous, or contrary to law.

On the record before it, the Court is not able to make a determination that the Public Auditor's findings of fact for Docket OPA-PA-12-018, in its Consolidated Decisions of March 6, 2013, were arbitrary, capricious, fraudulent, clearly erroneous, or contrary to law. However, the discovery authorized by this Court has uncovered information not before the Public Auditor that, had it been known at the time, may have had a material effect on the Public Auditor's fact-finding. The Court concludes that the currently standing decision by the Public Auditor was not made in light of all the relevant evidence.

Moreover, 5 GCA § 5250 states that: "No procurement award shall be made unless the responsible procurement officer certifies in writing under penalty of perjury that he has maintained the record required by § 5249 of this Chapter and that it is complete and available for public inspection. The certificate is itself a part of the record." 5 GCA § 5250 (2005). Such a

certification has been made, but proceedings before this Court have revealed that the procurement record was not, in fact, complete. This Court is required to give "great weight and the benefit of reasonable doubt" to "any determination regarding the application or interpretation of the procurement law," but with regard to the key question of the interpretation and application of § 5250 to a case with an incomplete procurement record, the Public Auditor has not yet made a determination, because it was new information discovered before this Court that revealed that the procurement record was incomplete.

The Court is unaware of any Guam Supreme Court guidance on the appropriate action for the Superior Court to take in such a situation. However, Guam's Procurement Law is based in large part on the American Bar Association's Model Procurement Code. 5 GCA Ch. 5, introductory cmt. (2005). Approximately half of United States jurisdictions likewise use the Model Procurement Code as a template for their own procurement statutes. See National Association of State Procurement Officials, 2011-2012 NASPO Survey of State Procurement Practices 1 (2012). Such jurisdictions generally make vacatur of an administrative procurement ruling and remand to the appropriate decision-maker a permissible remedy that may be ordered by a reviewing court. See, e.g. Arakaki v. State, Dep't of Accounting and General Services, 952 P.2d 1210, 1214 (Haw. 1998) (vacating and remanding an administrative hearing officer's decision because of a clearly erroneous finding of fact); see also Alexander & Alexander, Inc. v. State, 596 So.2d 822, 828 (La. Ct. App. 1991) (voiding the previous proceeding and remanding the case to the Chief Procurement Officer upon finding that the state government had materially violated the Procurement Code).

The Court determines that it is neither able to affirm or reverse the Public Auditor's ruling, as that previous ruling was based on what has now been found to be materially

incomplete information. Therefore, the Court hereby VACATES the Public Auditor's Decision of March 6, 2013 in the case of OPA-PA-12-018. The Public Auditor is hereby ORDERED to reopen that case and, in light of the evidence revealed in this civil action, issue a new Decision, finding the relevant facts and interpreting and applying the Guam Procurement Law. The Public Auditor's new Decision shall not be inconsistent with this Decision and Order. The trial date set for August 18, 2014 is hereby VACATED. This Court's jurisdiction is hereby STAYED during the pendency of the renewed proceeding before the Public Auditor.

**VI. Costs and Attorney's Fees; Defendant's Counsel's Due Diligence**

Under Guam Rule of Procedure 37(a)(4), if a discovery motion is granted, the court shall require the losing party or losing party's counsel to pay the moving party the reasonable expenses incurred in making the motion, including attorney's fees. GRCP 37(a)(4). However, the court shall not award costs and attorney's fees if the movant did not make a good faith effort to obtain the disclosure or discovery without court action, if the nondisclosure was substantially justified, or if other circumstances make an award of expenses unjust. Id. The Court construes the Plaintiff's Motion for Sanctions to include a request for a Rule 37(a) order compelling discovery with an attendant request for costs and attorney's fees. See Pl.'s Mot. 1, Apr. 9, 2014 (requesting production of evidence and an award of fees and costs). Moreover, the Plaintiff's motion also includes a request for personal sanctions against the Defendant's counsel under Guam Rules of Civil Procedure 11 and 26(g). Pl.'s Mot. 6-9, Apr. 9, 2014. The basis for the motion for personal sanctions was alleged suppression and/or spoliation of evidence by Defendant's counsel. Id. at 6. The Court shall address the personal sanctions first.

When the Defendant filed its opposition and cross-motion, the Defendant's Counsel included a declaration, and a series of attachments, detailing the work he performed to comply

with the Government's discovery obligations. Def.'s Opp. Ex. 1, Attachments A-K. At the hearing on June 18, 2014, many of these documents, as well as other documents from the procurement record, were introduced into evidence for the limited purpose of establishing the defense counsel's due diligence in complying with discovery obligations. R. Log 5, 6, 9, 14, Jun. 18, 2014.

Upon review of these documents and the hearing testimony, the Court concludes that the Defendant's counsel engaged in extensive efforts to perform his due diligence obligations, and that although not all documentation required to be included in the procurement log was indeed included, and although the absent documents have also not been produced in discovery, the Defendant's counsel has not committed a sanctionable violation. Accordingly, no personal sanctions against the Defendant's counsel are ordered.

Guam Rule of Civil Procedure 37(a)(4)(A), requiring payment of reasonable costs and attorney's fees to a successful movant of a Rule 37(a) motion, contains an exception when "other circumstances make an award of expenses unjust." GRCP 37(a)(4)(A). The Court is disheartened by the incompleteness of the procurement record, and by the fact that no one was ultimately responsible for ensuring that the Government complied with its obligations to generate, retain, and disclose the documents as required by 5 GCA § 5249 and the Guam Rules of Civil Procedure. The Court admonishes the Government to ensure that future procurement records conform to the requirements of the Guam Procurement Law. However, under the circumstances of the case, including the size of the procurement record, though incomplete, the documented extensive efforts of the Defendant's attorney to comply with discovery obligations, the fact that GSA representatives have declared that GSA has no more documentation than what GSA has already produced, the uncertainty that any absent documents, if existing, would affect

the merits of the case, the lack of previous guidance from the judiciary on the meaning of the Government's statutory obligations, and the fact that the taxpayers of Guam would ultimately have to shoulder the burden of any costs or fees award, the Court concludes that on this occasion an award of expenses would be unjust. Accordingly, the Plaintiff's request for costs and attorney's fees is DENIED.

**VIII. Defendant's Cross-Motion for Rule 11 Sanctions**

In its opposition, the Defendant cross-moved for Rule 11 sanctions against the Plaintiff's counsel. Def.'s Opp. 5-6, May 1, 2014. The Defendant argues that Rule 11 sanctions are warranted on the alleged bases that the Plaintiff, by and through counsel, filed a frivolous motion, was dishonest with regard to its knowledge of Dr. Okamura, made an unwarranted accusation as to the defense counsel's reasonable inquiry, had previous knowledge that only one bid would be accepted for Part E, and used improper litigation tactics. Id. at 5-16.

As stated above, the Court finds that not all documents that were required to be produced by 5 GCA § 5249, and by the Plaintiff's requests for production pursuant to the Guam Rules of Civil Procedure, were indeed produced. Therefore, the Plaintiff's Motion for Sanctions, which is in essence a discovery motion, is not frivolous or improper. For a litigant's counsel who believes opposing counsel has not turned over all the discovery materials required by law, filing a motion seeking an order to produce discovery is a proper action. See GRCP 37.

Whether or not Plaintiff knew that Dr. Okamura was involved with the procurement project is not precisely the right question for determining the propriety of discovery requests that relate to him. Rather, the Plaintiff argues that it did not know of certain documents relating to Dr. Okamura that should have been included in the procurement record, and that it only learned of their existence, or of the events that should have caused the documents' creation,

upon deposing him. See Pl.'s Mot. 3, Apr. 9, 2014. The Court does not find the Plaintiff's counsel's representations of the Plaintiff's level of familiarity with the role of Dr. Okamura to be sanctionable.

Nor is the fact that the Plaintiff knew ahead of time that only one bidder would win the bid for Part E, both the 10bps service and the 1bps service, relevant to a sanctions motion. The Plaintiff is not challenging the Government's representations about part E, but rather the wisdom of the Government's decision not to split Part E into two sub-bids. Pl.'s Compl. 7, Mar. 20, 2013. Its right to do so before this Court is statutorily provided by the Guam Procurement Law. 5 GCA § 5480 (2005).

As stated above, the Court finds that the Defendant's counsel did not engage in a lack of due diligence in providing discovery materials to the Plaintiff that is worthy of sanction. The Court admonishes the Plaintiff's counsel over the potency of the rhetoric in the Plaintiff's April 9, 2014 motion. However, given the merits of the Plaintiff's position in this discovery dispute, the Court does not find that rhetoric to be sanctionable. The Defendant's Cross-Motion for Rule 11 Sanctions is DENIED.

## CONCLUSION

For the reasons set forth above, the Court GRANTS the Plaintiff's Motion for Sanctions. By way of remedy, Court VACATES the Public Auditor's Decision of March 6, 2013 in the case of OPA-PA-12-018. The Public Auditor is hereby ORDERED to issue a new Decision, not inconsistent with this Decision and Order, in light of the new evidence. The trial date set for August 18, 2014 is hereby VACATED. This Court's jurisdiction is hereby STAYED during the pendency of the renewed proceeding before the Public Auditor. The Plaintiff's request for costs

and attorney's fees is DENIED. The Defendant's Cross-Motion for Rule 11 Sanctions is DENIED.

**IT IS SO ORDERED** this day of ___AUG 0 8 2014___ .

**HONORABLE ARTHUR R. BARCINAS**
**Judge, Superior Court of Guam**

**SERVICE VIA COURT BOX**
I acknowledge that a copy the
original hereto was placed in the
court box of:

V.CAMACHO, AG·CIVIL,
MANN + DAYL
Date: 8/8/14 Time: 3:30pm

Deputy Clerk, Superior Court of Guam

RECEIVED FOR SERVICE:

Date:_____

Time:_____

_____
Marshal, Superior Court of Guam